**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: | ) Chapter 7 |
| | ) |
| **Damien Aguocha** | ) Case No. 18-10841-elf |
| **Obioma Aguocha,** | ) |
| | ) |
| **Debtors.** | ) |
| | ) |

**APPLICATION OF THE CHAPTER 7 TRUSTEE TO RETAIN BK GLOBAL REAL ESTATE SERVICES AND STAR REAL ESTATE TO PROCURE CONSENTED PUBLIC SALE PURSUANT TO 11 U.S.C. §§327, 328 , 330 and 506**

Gary F. Seitz, as Chapter 7 Trustee (the "Trustee"), files this Application To Retain BK Global Real Estate Services and Listing Agent and moves for an Order authorizing retention of (1) BK Global Real Estate Services ("BKRES") under the terms set forth in the agreement (the "BKRES Agreement") attached to BKRES' Affidavit of Disinterestedness at *Exhibit A* (the "BKRES Affidavit") and (2) Star Real Estate Group ("Listing Agent") under the terms of the agreement (the "Listing Agreement") attached to Listing Agent's Affidavit of Disinterestedness at *Exhibit B* (the "Listing Agent Affidavit").  In support thereof, the Trustee respectfully states as follows:

**JURISDICTION AND BACKGROUND**

1. On February 6, 2018 (the "Petition Date"), the Debtors filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code.

2. On February 6, 2018, Gary F. Seitz was appointed the Chapter 7 Trustee by the United States Trustee.

3. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this Court pursuant to 28 U.S.C. § 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

1

4. The statutory predicates for the relief requested in this Application are § 327 of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure.

5. On the Petition Date, the Debtors were the sole owners of real estate located at 648 Kenmore Rd, Philadelphia, PA 19151 (the "Real Estate").

6. The Debtors' schedules indicate that the Real Estate is worth approximately $120,000.00 but the Real Estate is subject a first lien (the "Mortgage") in favor of Newpennfin-Shellpoint (collectively, the "Secured Creditors"), in the aggregate sum of approximately $74,225.00.

7. The Trustee, after reviewing certain materials, including (without limitation) the BK Score™[1], sales analysis report and opinion of value for the Real Estate provided by BKRES and Listing Agent, has determined it to be in the best interest of the Debtors' estate and all creditors to negotiate to obtain Secured Creditors' agreement and consent ("Consent") to the following:

   a. The Trustee shall sell the Real Estate to whichever third party the Trustee determines to have made the best qualified offer during a public sale approved by the Court;

   b. A Secured Creditor shall buy the Real Estate from the Debtors' estate if (and only if) no such offer is made;

   c. The Secured Creditors shall release the Mortgage and otherwise waive all of their claims against the estate with respect to the Real Estate (including any deficiency claims resulting from the proposed sale); and

   d. The Secured Creditors shall agree to a 11 U.S.C. § 506 surcharge to pay all of the expenses associated with the proposed sale, including the payment of a 6% real estate brokerage commission to BKRES and Listing Agent and reimbursement of their out-of-pocket expenses, and provide a carve-out to pay the administrative expenses of the Debtors' estate, all as approved by the Court with a possible. distribution to unsecured creditors.

---

[1] The BK Score™ is a 100-point rating that is generated by a proprietary algorithm from 10 unique property attributes to consistently measure sales confidence and predict market value.

2

8. Trustee expects BKRES and Listing Agent to obtain Secured Creditors' Consent and plans to bring a separate motion seeking an order approving the sale of the Real Estate (the "Motion to Sell") within several months of the entry of the Order sought by this Application.

9. By this Application, the Trustee requests authority pursuant to Sections 327, 328(a) and 330 of the Bankruptcy Code to (a) retain BKRES and Listing Agent to procure Secured Creditor's Consent, and (b) approve Secured Creditor's payment of the fees described below directly to BKRES and Listing Agent at closing of the sale of the Real Estate, if and when the Consent and Motion to Sell are granted subject to approval of the Court.

## APPLICATION

10. Section 328(a) of the Bankruptcy Code provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327...on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed percentage or fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Section 330 of the Bankruptcy Code permits the Court to "award to a trustee… or a professional person employed under section 327…(A) reasonable compensation for actual, necessary services rendered [by such party]…and (B) reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1).

11. As further described in the materials attached to their affidavits, BKRES[2] and Listing Agent have extensive experience obtaining the consent and agreement of mortgage lenders and servicers to the sale of their collateral and resolution of any resulting unsecured claims in order to produce a recovery for estates from over-encumbered assets in which the estate has no or little actual equity.

---

[2] BKRES is the broker affiliate of BK Global (http://www.bkginc.com/).

3

12. The Trustee believes that the highest and best value for the Real Estate will be generated through a sale in which the Real Estate is widely marketed to the public and offered at the highest price that the market will bear. The Trustee further believes that such a sale is in the best interest of the Debtor's estate but can only be achieved if Secured Creditor's Consent is first obtained. That is why the Trustee believes that retaining BKRES and Listing Agent to obtain Secured Creditor's Consent is in the best interests of the Debtor's estate.

13. In no event will the estate have any obligation to pay BKRES or Listing Agent if a sale is not consummated hereunder. The terms of the BKRES Agreement and Listing Agreement provide that BKRES and Listing Agent are only entitled to payment if and when (a) Secured Creditor grants its Consent, (b) the Motion to Sell is approved by this Court and (c) the Real Estate is sold, in which event BKRES and Listing Agent will receive and share a 6% real estate brokerage commission at closing per the terms of an Application to the Court for an Order approving such and trustee will be compensated by an agreed surcharge from the mortgagee, all as approved by proper application to the Court.

14. BKRES and Listing Agent will not be entitled to any fees if Secured Creditor does not grant its Consent or the Court does not grant the Motion to Sell.

15. The Trustee submits that the terms of employment and compensation as set out in the BKRES Agreement and Listing Agreement are reasonable in light of the extensive experience of BKRES and Listing Agent and the nature of the services they provide.

16. BKRES attested that it is a disinterested person within the meaning of Section 101(14) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2014 and 2016(a). Attached hereto as *Exhibit A* is an Affidavit of Disinterestedness of BKRES. BKRES

4

also attests, pursuant to Bankruptcy Rule 2016, that it shall not split or share its fee with any individual or entity other than Listing Agent.

17. Listing Agent attested that it is a disinterested person within the meaning of Section 101(14) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2014 and 2016(a). Attached hereto as ***Exhibit B*** is an Affidavit of Disinterestedness of Listing Agent. Listing Agent also attests, pursuant to Bankruptcy Rule 2016, that it shall not split or share its fee with any individual or entity other than BKRES.

## BASIS FOR RELIEF

18. BKRES provides chapter 7 trustees with innovative valuable tools to predict the likelihood of success of a bankruptcy short sale or consented sale that may benefit creditors. Publicly available data is collected and generated by BKRES from a finite set of data points in a prescribed sequence to achieve a resulting score between the values of 1 and 100. The BK Score™ is shared with trustees, servicers, courts, and software management platforms to indicate the likelihood that an asset in a bankruptcy is qualified for consented disposition. The higher the BK Score™ there is a better chance to sell the property. In addition to the presented scores, BKRES provides the trustee a solution to sell the asset which maximizes the benefit to the estate. BK Global® is at the forefront of creating new industry standards for trustee services.

19. To consistently measure and predict market value of real estate assets nationally, in an ever changing and fluid real estate market, it is important to have a well-defined methodology that explains how values are derived. The BK Score™ uses multiple data points to predict sales confidence compared to the limited local market inputs used by real estate brokers who are not certified in short sales. BK Score™ incorporates several unique methodology questions that include the data points listed below.

5

20. The BK Score is an algorithm that considers over 30 data points to analyze assets providing Trustees and Servicers with an immediate evaluation of a property's probability for sale.

21. Four major benefits to the proprietary BK Score:

    a. Increased Confidence of a Consented Short Sale

        i. A decision tool that empowers trustees to make determinations on whether real estate assets qualify for a Consented Sale™

    b. Accelerates the Short Sale Decision Process

        i. Technology that utilizes scoring systems allows lenders/servicers to make instant valuation and sales consent decisions. This is notable as applications for consented sale of property can be approved by lenders/servicers in hours rather than weeks for sales values which score above a lender's score cutoff.

    c. Reduces Risk of Completing a Cooperative Short Sale

        i. There are certain barriers to a short sale. Servicers are frequently wary of short sale offers because of concerns that they are settling the debt at too low a price. Greater probability that servicers will consent to a short sale is made possible thanks to BK Score™.

        ii. The BK Score™ empowers any lender/servicer to quickly set a cut off price and begin the short sale process, without time-consuming phone calls, faxed documents, or any effort from the agent or trustee.

    d. Increases Transaction Transparency

        i. BK Global™ is integrated with most major lender/servicers nationally. The BK Score™, which has revolutionized the default

6

>servicing industry, helps servicers select and execute optimal baseline valuations based on measurable guidelines while driving efficiency, fostering transparency and facilitating compliance.

22.     With the use of BK Score™ agents and trustees can quickly collaborate and determine an appropriate list price that allow agents to begin pursuing sales offers with confidence. The BK Score™ algorithm has been developed by industry experts that have over 30 years of experience in Distressed Real Estate and Bankruptcy Sales. To date, over 2 years of bankruptcy assets have been analyzed and scored using the BK Global Scoring system. BK Score™ is a trademark pending registration with the US Trademark and Patent Office.

23.     The debtor's real estate in this case has obtained a score that suggests the likelihood of a consented sale that may benefit all parties.  It is for this reason that the Trustee seeks to engage BKRES in this case.

24.     Once retained, BKRES will work to obtain what it refers to as a Consented Sale™ -- an "enhanced" agreement between all requisite stakeholders, the most important being the lender/servicer, of a residential or commercial property for less than what the owner still owes on the mortgage.

25.     A Consented Sale™ is a beneficial alternative to foreclosure when a homeowner needs to sell and can no longer afford to make their mortgage payments. The lender agrees to accept less than the amount owed to pay off a loan now rather than taking the property back by foreclosure and trying to sell it later. Lenders agree to a Consented Sale™ because they believe it will net them more money than going forward with a lengthy and costly foreclosure process.

26.     Many Bankruptcy Courts have granted motions to sell over-encumbered property free and clear of liens with carve-outs that provide a meaningful distribution to creditors. The

sales benefit the real estate market by circulating properties that were not being foreclosed quickly enough. To accomplish short sales with greater value to creditors, Trustees are also armed with the ability to surcharge senior lender collateral and to subordinate some secured debt – such as taxes.

27. The applicable statute - § 363(f) - authorizes a Trustee to sell property of the estate free and clear of liens only under the limited circumstances set forth under the statute. Without dispute, this is to effectuate the Trustee's duty to liquidate the property of the estate [*see* 11 U.S.C. § 541] as is compatible with the best interests of parties in interest [*see* 11 U.S.C. § 704(a)(1)].

28. According to the Supreme Court, a Trustee's role is to "maximize the value of the estate,"[*Commodity Futures Trading Com'n v. Weintraub*, 471 U.S. 343, 352 (1985)] but, "by the settled practice, a sale free of liens will not be ordered by the Bankruptcy Court if it appears that the amount of the encumbrance exceeds the value of the property."[*Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 584 (1935)]. Thus, "the bankruptcy court should not order property sold free and clear of liens unless the sale proceeds will fully compensate secured lienholders and produce some equity for the benefit of the bankrupt's estate."[*Matter of Riverside Investment Partnership*, 674 F.2d 634, 640 (7th Cir. 1982)]. That is not the issue. Here, the Trustee simply seeks to engage a professional that to assist in obtaining a consented sale that is mutually beneficial to all parties. If BKRES is not permitted to be retained, a valuable opportunity will be lost.

29. A Trustee may certainly seek a lienholder's voluntary 'consent' to a short payoff through negotiations. [*See*, *e.g.*, *In Re A.G. Van Metre, Jr., Inc*., 155 B.R. 118, 120 (Bankr. E.D. Vir. 1993) (finding that § 363(f)(3) was satisfied where "as a result of negotiations by the trustee

8

[secured creditor] agreed to reduce its lien to $700,000.00 in order to consummate a sale of the property.")] Such negotiations are entirely consistent with a Trustee's duty to 'maximize the value of the estate.' When the trustee steps in and reaches a carve-out settlement with the mortgage holder to allow for a short-sale of the property and a carve-out of the sale proceeds from the payoff of the mortgage, a deal is being made "in everyone's best interest." [*See In re Bonnie Jean Bunn-Rodemann*, 491 B.R. 132 (Bankr. E.D. Cal. 2013) where Judge Sargis stated: "In reality, these debtor-**trustee issues concerning a short sale are steeped in the highest tradition of bankruptcy – what deal can be made that is in everyone's best interest.**"] In these situations, every unsecured creditor would prefer a meaningful distribution to no distribution.

30. Even the debtor can benefit from the bankruptcy short sale process. The purpose of a short sale outside of bankruptcy is to relieve the borrower's obligation to pay the difference between the sale price of the home and the mortgage amount when the property is "underwater" or worth less than what is owed. Chapter 7 bankruptcy gives the borrower the option of "surrendering" the property back to the bank with no continuing obligation under the mortgage and no corresponding tax liability for the forgiveness of debt (usually a taxable event).

31. However, surrendering a home in a chapter 7 bankruptcy does not transfer title of the property to the secured creditors which may leave the borrower on the hook for post-petition real estate taxes, home owner's association dues, utilities, or other liabilities connected with home ownership. When a home is surrendered via bankruptcy, the bank still must foreclose the mortgage to remove the owner's obligation for post-petition charges of "ownership". If someone is hurt on the debtor's property, so long as the title remains in the debtor's name, he/she is at risk.

9

The house does not become the creditors until the foreclosure is accomplished. In many places, however, the foreclosure process is very slow or even stalled.

32. Moreover, a debtor who wishes to buy another house in the future may do so with a shorter waiting period under the Fannie Mae and Freddie Mac lending guidelines. Under their guidelines, the waiting period for a borrower to purchase another house after a short sale is only 2 years whereas it's 7 years for a mortgage foreclosure.

33. If the trustee conducts a short sale, the debtor will typically get as much, or more, time in the house as she would if the mortgage went through foreclosure. In addition, the debtor will not have a foreclosure on her credit report.

34. Finally, other societal benefits befall debtors through Trustee short sales. From a purely emotional standpoint, many debtors simply want to get on with their lives after having dealt with their financial problems, and for them, this includes selling their house so that they can have a sense of closure with the entire process.

### SHORT SALES ARE MUTUALLY BENEFICIAL

35. The bankruptcy short sale process is not easy. First and foremost, the parties must be extremely patient. The bankruptcy sales transaction can take time and can be filled with many ups, downs and delays which can test patience. However, a successful short sale in the right bankruptcy case can benefit every party involved. Unsecured creditors can get a meaningful distribution where none was possible before. Secured creditors can get their money faster and often in greater sums than through a traditional foreclosure. Debtors get physical, financial, and emotional release from further entanglement with the real estate. Taxing authorities get the benefit of transfer taxes and real estate added to the income producing tax rolls. The neighborhood

welcomes new neighbors with more solid financial situations. Of course, the intermediaries, real estate agents and the trustees also benefit.

36. The Consented Sale™ sought is an "enhanced" short sale and BK Global™ can obtain pre-consent by utilizing its proprietary BK Score™ system that analyzes and provides lenders an immediate evaluation of the value of the property and its probability for sale. In addition, BK Global™ is able to agree with lenders/servicers on a strike price for each property and utilize its national BKGlistings.com marketplace for listings and online offer management platform.

37. The Consented Sale™ is

    a. Beneficial to the Bankruptcy Estate

        i. Lenders/servicers will generally provide BKRES with a pre-approved strike price for the Consented Sale™. The strike price provides brokers and agents with a baseline value from which to set sales pricing. All proceeds, less broker commissions and a carve-out for professionals and unsecured creditors, are to the benefit of the estate. The Consented Sale™ benefits both secured- and unsecured-creditors.

    b. Better Than Foreclosure for Debtor

        i. Consented Sale™ makes more sense than foreclosure. In general, when a debtor wants to obtain a loan to purchase a property in the future, more opportunities will be available to him or her if he or she conducts a Consented Sale™ through the bankruptcy process. And, contrary to popular belief, a debtor can be current on his or her payments and still qualify for a Consented Sale™. In fact, if a debtor is current on his or her mortgage through a Consented Sale™, he or

    she can qualify for an FHA loan afterward without any waiting period(s). The same option would be unavailable following a foreclosure.

  c. A Much Shorter Process

    i. BK Global® shortens the average time of a Consented Sale™ by obtaining lender pre-approvals, which streamlines the process. Its expert negotiators have existing relationships with all servicers, with clear requirements to reduce the standard average time it takes to complete a Consented Sale™. The average Consented Sale™ takes approximately three-to-four months from the acceptance of an offer to a completed purchase.

  d. Powerful Marketing Generating Competition

    i. BKRES markets all assets on the largest bankruptcy listing services marketplace in the United States, BKGlistings.com (BLS), around-the-clock. The national exposure and syndication — and the ability for buyers to submit offers direct online -- ensures the most effective marketplace for disposition of assets. BLS' advanced technology platform allows buyers and sellers to connect interactively to manage multiple offers, as well as accept or reject them.

  e. Beneficial to Lenders

    i. Lenders agree to a Consented Sale™ because they believe it will net them more money than winding through the lengthy, costly and complicated foreclosure process.

    f.   No Cost for Trustee/Estate

        i.   If retention is approved by the court, BKRES is responsible for all costs involved in a Consented Sale™, including title and property insurance, as well as filing fees related to motions to allow the sale of property (if any).

38.    In conclusion, "these debtor-trustee [-secured creditor] issues concerning a short sale are steeped in the highest tradition of bankruptcy – what deal can be made that is in everyone's best interest." The Trustee in the exercise of his business judgment after reviewing the information available for this case seeks to retain BKRES to allow him to try to make the necessary deals to benefit all – as is his duty.

WHEREFORE, the Trustee moves the Court's authority to retain BKRES and Listing Agent in this case pursuant to Sections 327, 328(a), 330 and 506 of the U.S. Bankruptcy Code, and all other just and proper relief.

Dated: September 7, 2018                GELLERT SCALI BUSENKELL & BROWN LLC

                                        By:    */s/ Holly S. Miller*
                                               Gary F. Seitz (PA ID #52865)
                                               Holly S. Miller (PA ID #203979)
                                               8 Penn Center
                                               1628 John F. Kennedy Blvd, Suite 1901
                                               Philadelphia, Pennsylvania 19103
                                               Telephone:  215-238-0010
                                               Facsimile:  215-238-0016
                                               gseitz@gsbblaw.com
                                               hsmiller@gsbblaw.com
                                               *Counsel to the Chapter 7 Trustee*